UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRACIE E., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00307-SEB-MPB |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed.

R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No.

10). Plaintiff Tracie E.[1] seeks judicial review of the Social Security Administration's final

decision deeming her ineligible for Supplemental Security Income (SSI). The matter is fully

briefed. (Docket No. 21; Docket No. 28; Docket No. 37). It is recommended that the District

Judge **AFFIRM** the decision of the Commissioner of the Social Security Administration finding

that Plaintiff Tracie E. is not disabled.

## I.    PROCEDURAL BACKGROUND

On September 26, 2016, Tracie E. filed an application for disability insurance benefits,

alleging a disability onset date of March 31, 2016. (Docket No. 8-2 at ECF p. 192). Her

application was denied initially on March 7, 2017, and upon reconsideration on August 15, 2017.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

(Docket No. 8-2 at ECF p. 100; Docket No. 8-2 at ECF p. 116). Administrative Law Judge Jeanette Schrand conducted a hearing on October 2, 2018, at which Tracie E., represented by counsel, her sister Kimberly Stevens, and vocational expert ("VE") Stephanie Archer, appeared and testified. (Docket No. 8-2 at ECF p. 36–88). The ALJ issued a decision on January 22, 2019, concluding that Tracie E. was not entitled to receive benefits. (Docket No. 8-2 at ECF pp. 14–26). The Appeals Council denied review on December 2, 2019. (Docket No. 8-2 at ECF pp. 1–3). On January 28, 2020, Tracie E. timely filed this civil action, asking the court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

## II. STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational

requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. FACTUAL BACKGROUND

When Tracie E. filed, she alleged she could no longer work primarily because of a brain tumor.[2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Tracie E. was not disabled. (Docket No. 8-2 at ECF p.

---

[2] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the court's disposition of this case are discussed below.

26). At step one, the ALJ found that Tracie E. had not engaged in substantial gainful activity[3]

since March 31, 2016, the application date. (Docket No. 8-2 at ECF p. 12). At step two, the ALJ

found that Tracie E. had the following "severe impairments: Grade II Mengioma status post right

parieto-occiptal crainiotomy; bilateral carpal tunnel status post cubital tunnel releases; and left

homonymous interior quadrantanopsia." (Docket No. 8-2 at ECF p. 13). At step three, the ALJ

found that Tracie E. did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments. (Docket No. 8-2 at ECF p. 15).

After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant should never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; is limited to frequently fingering with bilateral hands; is limited to occasional exposure to excessive vibration; occasional exposure to wet, slippery, or uneven walking surfaces; should never be exposed to hazards such as moving mechanical parts or unprotected heights; and is limited to occupations that do not require driving motor vehicles at work. In addition, due to vision issues the claimant is further limited to occupations that require no more than occasional bilateral peripheral vision; occupations that require no more than occasional exposure to bright sunshine and no exposure to flashing lights. The claimant is limited to work involving simple, routine tasks and would miss no more than one day per month due to seizure or other impairment related symptoms.

(Docket No. 8-2 at ECF p. 17). At step four, the ALJ found that Tracie E. was unable to perform

her past relevant work as a dump truck operator. (Docket No. 8-2 at ECF p. 24). At step five,

considering Tracie E.'s age, education, work experience, and RFC, as well as the VE's testimony,

the ALJ concluded that Tracie E. could have performed other work through the date of the

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

decision with jobs existing in significant numbers in the national economy. (Docket No. 8-2 at ECF p. 25).

## IV. DISCUSSION

Tracie E. raises two assignments of error: (1) that the ALJ failed to find that Plaintiff met medical impairment Listing 11.05B and (2) that the ALJ used activities of daily living performed by Plaintiff to determine that she had a residual functional capacity to work a full time job at the level of SGA and that the ALJ cherry picked the evidence that supported her decision while ignoring other contrary evidence. (Docket No. 21 at ECF p. 7). However, as the Commissioner recognizes, woven through both of these arguments is an additional argument that the ALJ erred in the weight she assigned to the medical opinions. The undersigned will begin with this third argument.

### 1. ALJ's treatment of the Medical Opinions

Woven through both of Tracie E.'s arguments is a third argument that the ALJ improperly weighed the medical opinions in this case, primarily her treating physician's, Dr. Regnier, residual functional capacity assessment, but also Drs. Jackson, Greenberg, and Jing's opinions and the opinions of the state agency physicians.

### a. Dr. Regnier

Tracie E. argues that "[d]isappointingly, the ALJ gives Dr. Regnier little weight." (Docket No. 21 at ECF p. 12). She argues that Dr. Regnier's medical source statement was both persuasive and conclusive of her ability (or inability) to maintain a full-time job. She specifically argues that the ALJ erred in concluding that Dr. Regnier was merely sympathizing with Tracie E. or that Tracie E. was insistent on receiving a supportive note from Dr. Regnier. Tracie E. argues that Dr. Regnier has been her long-term primary care physician and he had the best longitudinal

6

and depth of knowledge of her medical history. Finally, Tracie E. disagrees with the ALJ's conclusion that Dr. Regnier's opinions "depart substantially from the rest of the record," although Tracie E. does not cite any portion of the record in support of this statement. (Docket No. 21 at ECF p. 13).

The ALJ had the following to say about Dr. Regnier:

> As for the opinion evidence, Dr. David Regnier completed a form on September 18, 2018 opining as to extreme and significant limitations including absences more than five days per month, being off task more than 30% of the time, a need for unscheduled breaks four times during an eight-hour workday, frequent interference with her symptoms in her ability to perform tasks, the ability to stand and walk for less than an hour, sitting for four hours, and a need to lie down for about four hours in an average day (Exhibit 18F). Dr. Regnier also opined the claimant could occasionally lift ten pounds, would have problems with balance, and could not walk more than a block, yet did not require an assistive device (Id.). However, these opinions are given little weight as unsupported in the longitudinal treatment history and ongoing physical examination findings as outlined above. Earlier in the same month when this opinion was offered, the claimant's treating neurologist, Dr. Jing, noted the claimant had no blurry vision in a review of systems, and was appearing alert, in no apparent distress, normally oriented, with normal comprehension (Exhibit 19F/2). Physically, the exam does not support the extreme physical limitations opined by Dr. Regnier, with normal strength, sensation, muscle tone, coordination, and gait (Exhibit 19F/3). The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the instant case.

(Docket No. 8-2 at ECF p. 23).

Based on the filing date of Tracie E.'s application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record.") *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 404.1527(c). However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the court must uphold the determination. *See Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

The ALJ correctly observed that contemporary treatment notes[4] written by Dr. Jing, Plaintiff's treating neurologist, did not support Dr. Regnier's opinion. Dr. Regnier concluded that Plaintiff could only occasionally lift as much as ten pounds, while Dr. Jing found she had normal strength and muscle tone without atrophy. (Docket No. 8-2 at ECF p. 23, *comparing* Docket No. 8-10 at ECF p. 76 to Docket No. 8-10 at ECF pp. 79, 81). Dr. Regnier stated that Plaintiff had problems with balance when she walked; Dr. Jing stated that she walked normally without any unsteadiness or incoordination (ataxia). (*Compare* Docket No. 8-10 at ECF p. 77 *with* Docket

---

[4] Dr. Jing's notes date from September 5, 2018. (Docket No. 8-10 at ECF pp. 76-79). Dr. Regnier filled out the checklist opinion on September 19, 2018. (Docket No. 8-10 at ECF p. 79), but the evidence indicates that he last examined Plaintiff on April 3, 2018. (Docket No. 8-10 at ECF p. 48).

No. 8-10 at ECF p. 81). Dr. Regnier stated that Plaintiff's seizures and headaches were getting worse, and headache pain would force her to lie down for about four hours in each eight-hour work day; Dr. Jing stated that she no longer had recurrent seizures or daily headaches, and when she did have headaches they were less severe and much shorter. (*Compare* Docket No. 8-10 at ECF p. 75 *with* Docket No. 8-10 at ECF pp. 79, 81). Dr. Regnier asserted that Plaintiff's medications caused nausea, vertigo, and sedation; Dr. Jing stated that Plaintiff did not experience side-effects from her medications. (*Compare* Docket No. 8-10 at ECF p. 75 *with* Docket No. 8-10 at ECF p. 81). Dr. Regnier stated that Plaintiff had blurred vision—generally; Dr. Jing specified that any blurring was in her peripheral vision. (*Compare* Docket No. 8-10 at ECF p. 75 *with* Docket No. 8-10 at ECF p. 68). An ALJ may properly discount a treating physician's opinion if it is inconsistent with evidence from another physician. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). In this case, the evidence from Plaintiff's treating specialist constitutes substantial evidence for giving little weight to the opinion of her primary care physician.

The ALJ also correctly observed that the extreme limitations in Dr. Regnier's opinion were internally inconsistent, and inconsistent with his treatment notes. For example, the ALJ noted that Dr. Regnier asserted that Plaintiff had problems with balance and vertigo, such that she could not walk a block over uneven ground, but despite those problems did not require an assistive device. (Docket No. 8-2 at ECF p. 23 citing Docket No. 8-10 at ECF pp. 76–77). Similarly, at one point Dr. Regnier stated that Plaintiff would require four unscheduled 20-minute rest breaks in an eight-hour work day, while at another he stated that she would have to lie down for more than three hours before she could stand again, and at yet another said she would have to spend about half of the work day lying down. (Docket No. 8-10 at ECF pp. 76–77). Internal inconsistencies between a physician's opinion and his notes or other findings, are

appropriate reasons for rejecting the physician's opinion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).

Plaintiff objects to the ALJ's comment that the extreme limitations in Dr. Regnier's opinion might reflect a desire to help his patient. (*See* Docket No. 8-2 at ECF p. 23). The ALJ, however, provided appropriate context for her comment. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("The treating physician's opinion . . . may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.' *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)'"). Even if the ALJ's comment was pure speculation, it at most amounts to harmless error, because it was not the basis of the ALJ's determination to give little weight to Dr. Regnier's opinion. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (error that would have no impact on the result is harmless). It is evident from the construct of the ALJ's opinion that these comments are not the sole or even a deciding basis for the ALJ's decision to assign little weight. The ALJ first provides all the substantive reasons for the weight assigned and then states "[a]nother reality" and explains why the possibility of this reality is more likely in this instance. Many of Dr. Regnier's statements that Plaintiff had to lie down for three to four hours a day appears to come from Plaintiff's self-reports, as noted by the ALJ, rather than the medical evidence. (Docket No. 8-2 at ECF p. 17, *compare* Docket No. 8-3 at ECF p. 25 *with* Docket No. 8-10 at ECF pp. 76–77). "[I]f the treating physician's opinion is . . . based solely on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter*, 550 F.3d at 625.

Plaintiff maintains that the evidence from Dr. Regnier is, by itself, sufficient to establish disability. (Docket No. 21 at ECF pp. 6, 19) ("[Plaintiff] submits that [Dr. Regnier's medical source statement] is not only persuasive but conclusive that because of her impairments after her

major brain surgery she can no longer maintain a full time job."). But the standard for judging the ALJ's decision is not whether the evidence might support a different conclusion, but whether the decision is patently wrong. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).

In sum, when it comes to statements made by acceptable medical sources, the presumption is that a treating assessment is entitled to deference unless it conflicts with, at least, substantial evidence. Here, the ALJ has cited substantial evidence with which Dr. Regnier's opinion conflicts and reversal is not warranted on this ground.

**b. Drs. Jackson, Greenberg, and Jing**

Tracie E. argues that the ALJ "blew of the brain surgeon, the attending physician, the doctor who did her cubital tunnel release, the neurologist and the nurse practitioner without adequate explanation." (Docket No. 21 at ECF pp. 13–14). She argues the ALJ erred in giving little weight to Dr. Jackson, who is the brain surgeon, and disagreed that Tracie E. would be totally disabled for 12 weeks following the brain surgery. Moreover, she argues, the ALJ discounted Dr. Greenburg's opinion that for approximately 8 to 10 weeks following her cubital release surgery that Tracie E. would be unable to work. Finally, she argues that the ALJ also erred in discounting Dr. Jing, the neurologist, who agreed that there should be no climbing or driving—which the ALJ gave great weight—but in the same sentence gave little weight to the fact that Plaintiff was unable to return to work. Tracie E. argues that these conclusions are internally inconsistent.

I find that Plaintiff has misread the ALJ's decision in several respects. First, the ALJ did not dispute Dr. Jackson's statement that Plaintiff was unable to return to work for the first twelve weeks following her brain surgery. (Docket No. 8-2 at ECF p. 23, citing Docket No. 8-4 at ECF p. 33). Rather, the ALJ is clear she gave the opinion limited weight because the "short-tern

nature of the restriction for a period of surgical recovery" simply did not address Plaintiff's long-term ability to function. (Docket No. 8-2 at ECF p. 23). In addition, Dr. Jackson's opinion addressed only Plaintiff's ability to return to work to her past work as a truck driver, and never considered whether her functional limitations would affect her ability to perform any other work. (Docket No. 8-4 at ECF p. 33). The ALJ accepted that Plaintiff could not return to her past work. (Docket No. 8-2 at ECF p. 24). Because Dr. Jackson's opinion addressed Plaintiff's ability to perform work-related activities only during the first twelve weeks after her surgery, the ALJ reasonably gave it limited weight.

The ALJ applied the same rationale to Dr. Greenberg's opinion that Plaintiff could not perform any work with her right arm until June 17, 2016, and could not return to work as a truck driver until June 24, 2016. (Docket No. 8-2 at ECF p. 23, citing Docket No. 8-4 at ECF pp. 10, 29). The ALJ did not dispute Plaintiff's inability to work in the weeks after her cubital tunnel surgery, but correctly observed that Dr. Greenberg's opinion was time-limited and did not address Plaintiff's long-term ability to function. (Docket No. 8-2 at ECF p. 23). The ALJ also did not disregard the May 2016 note from Ms. Mote, the nurse practitioner in Dr. Greenberg's office, that Plaintiff "should remain off work" from May 12 to June 16, 2016. (Docket No. 8-2 at ECF p. 23, citing Docket No. 8-4 at ECF p. 30). The ALJ correctly gave that conclusory statement no weight because it too was time limited, and provided no support for the bare assertion that Plaintiff should be off work. (*Id.*). In addition, the ALJ accurately observed that determining that a claimant is unable to work is a decision reserved for the Commissioner. 20 C.F.R. § 404.1527(d); *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010).

The ALJ noted that the only opinion that Dr. Jing provided, after his first examination of Plaintiff in September 2016, was that she should not engage in climbing or driving. (Docket No.

8-2 at ECF p. 24, citing Docket No. 8-4 at ECF p. 35). The ALJ generally accepted these restrictions and incorporated them into Plaintiff's residual functional capacity. (Docket No. 8-2 at ECF p. 17). I find that the ALJ's statement that she gave little weight to the rest of Dr. Jing's opinion inartful because all Dr. Jing said was that he was unable to form an opinion about Plaintiff's ability to return to her past work because he had only seen her once. (Docket No. 8-4 at ECF p. 35). Indeed, because Dr. Jing had only seen Plaintiff once when he provided this opinion, he did not yet qualify as a treating source under SSA's regulation. 20 C.F.R. § 404.1527(a)(2). *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). The ALJ was, however, correct that Dr. Jing's inability to assess Plaintiff's ability to perform work-related activities in 2016 had little bearing for determining whether she met the criteria for disability.

At the very least, the ALJ "minimally articulated" her reasons for giving little weight to the time-limited opinions of Drs. Jackson and Greenberg. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ's analysis and discussion of the evidence makes it clear that she adequately addressed the "treating physician" rule embodied in 20 C.F.R. § 404.1527(c). This analysis is not patently wrong.

### c.  State Agency Physicians

Tracie E. argues that the ALJ should not have credited the opinions of the state agency physicians. She argues that they did not review a portion of the medical records, including Dr. Jing's most recent treatment notes and Dr. Regnier's medical source statement. (Docket No. 21 at ECF p. 14). Thus, Tracie E. argues that the ALJ "played doctor" by giving "considerable weight" to the state agency medical consultants and not submitting medical evidence received after their reviews to a medical expert.

The undersigned finds that the ALJ reasonably rejected Dr. Regnier's medical source statement, as discussed above, thus its absence does not deem the state agency physician's opinions outdated. Moreover, the ALJ observed that the objective medical evidence that post-dated the state agency physician's reviews, particularly Dr. Jing's treatment notes, indicated that Plaintiff's condition had improved, not deteriorated, since the most recent state agency physician in August 2017 (Docket No. 8-2 at ECF pp. 22–23), and the consultants' opinions remained consistent with the longitudinal medical evidence. (Docket No. 8-2 at ECF p. 24). Only the checklist opinion from Dr. Regnier—reasonably rejected by the ALJ—contradicts the state agency consultants' opinions. The ALJ appropriately explained why she found that the consultants' assessment of Plaintiff's residual functional capacity was consistent with the later medical evidence.

### 2. Medical Impairment Listing 11.05B

Tracie E. argues that the ALJ erred in finding that she did not meet Medical Impairment Listing 11.05B. for benign brain tumors. Tracie E. argues that she meets the Listing's requirement for both the physical functioning with severe vision problems, focal seizures, and recurrent headaches and for the mental functioning due to her marked limitations with understanding, remembering, and applying information, as well as marked limitations in concentrating, persisting, or maintaining pace.

A claimant has the burden to present medical findings that either meet an impairment described in SSA's Listing of Impairments regulation or equal in severity to *all* the criteria described in the Listing. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. §§ 404.1525, 404.1526); *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, a claimant is

presumptively eligible for benefits." *Id.* (citing 20 C.F.R. §§ 404.1525, 404.1526). An impairment that manifests only some of the criteria, no matter how severe, does not qualify. *Zebley*, 493 U.S. at 431.

"[T]he responsibility for deciding medical evidence rests with the [ALJ]." 20 C.F.R. § 404.1526(e)(3).

> Listing 11.05(B) for Benign brain tumors requires:
>
>> Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
>> (1) Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
>> (2) Interacting with others (see 11.00G3b(ii)); or
>
>> (3) Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
>> (4) Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404 Subpt. P., App. 1, Listing 11.05(B).

At the hearing in this case, Plaintiff's counsel argued that Plaintiff met Listing 11.05B. (*See* Docket No. 8-2 at ECF p. 41), and the ALJ's decision later explained that Plaintiff suffered from the "severe impairment[ ]" of "Grade II Mengioma status post right parieto-occipital crainiotomy" at step two, (*see* Docket No. 8-2 at ECF p. 13). At step three, the ALJ spent six paragraphs discussing Listing 11.05(B). (*Id.* at ECF pp. 15–16).

Plaintiff maintains that Dr. Regnier's opinion is the best evidence that she meets the criteria of Listing 11.05(B). (Docket No. 21). But, the ALJ reasonably rejected Dr. Regnier's opinion because the restrictions it imposed were inconsistent with other contemporary evidence in the record. Moreover, the opinions of Plaintiff's treating specialists do not address her long-term ability to function, let alone the specific criteria of Listing 11.05. The ALJ appropriately

considered the Plaintiff's treating specialists' notes in concluding that Plaintiff had no more than moderate, rather than marked, limitations in physical and/or mental functioning, and thus did not meet the criteria of Listing 11.05. (Docket No. 8-2 at ECF pp. 15–17).

It is undisputed that Plaintiff had brain surgery and was severely impaired by the after-effects of the same, including a reduced visual field. But, in determining disability at Step Three, the issue is not the presence of the impairment, but whether the objective medical evidence—not the claimant's subjective complaints—meet the criteria of a given listed impairment. 20 C.F.R. §§ 404.1506(b)(4), 404.1529(d)(3). The Plaintiff's argument largely consists of a laundry list of symptoms and third-party observations. That is insufficient to satisfy her burden at Step 3. The regulations explicitly state that SSA "will not substitute your allegations of pain or other symptoms for a deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment." 20 C.F.R. §§ 404.1506(b)(4), 404.1529(d)(3). The Seventh Circuit has held that this regulation "provides that an ALJ will not consider the individual's own allegations if the medical evidence demonstrates a lack of severity." *Curvin v. Colvin*, 778 F.3d 645, 650-51 (7th Cir. 2015).

In determining that Plaintiff had no more than moderate limitations in mental functioning, the ALJ correctly observed the record contained virtually no objective evidence that Plaintiff had problems with memory or concentration. (Docket No. 8-2 at ECF pp. 15–16). The mental status examinations that Dr. Jing performed were consistently normal, and he mentioned her memory, attention span, and ability to concentrate only to note that they were normal. (Docket No. 8-2 at ECF p. 16, *see, e.g.*, Docket No. 8-4 at ECF p. 101; Docket No. 8-6 at ECF p. 132; Docket No. 8-8 at ECF p. 78; Docket No. 8-9 at ECF p. 65, 123). Although subjective symptoms are generally not relevant to a Step Three analysis, the ALJ nonetheless noted

Plaintiff's allegations of memory problems, but also that her sister testified that despite some problems with concentration, Plaintiff could follow spoken instructions well and retained the ability to handle her own finances, remember her numerous medications, shop independently, attend church services, and care for her four grandchildren on a regular basis. (Docket No. 8-2 at ECF pp. 15–16). The ALJ reasonably concluded that these activities, coupled with the absence of any objective medical evidence establishing problems with remembering, applying information, or maintaining attention and concentration, indicated that the mental limitations resulting from Plaintiff's craniotomy were no more than moderate. (Docket No. 8-2 at ECF p. 15).

Elsewhere in her decision, the ALJ observed that Dr. Jing's treatment notes consistently showed that Plaintiff had no problems with muscle strength and tone, and walked normally without balance and coordination problems (ataxia). (Docket No. 8-2 at ECF pp. 20–21). She also noted that Plaintiff's visual field, though reduced, was at least 90% intact in both eyes. (Docket No. 8-2 at ECF p. 21). The ALJ also noted that there were stark differences between Plaintiff's description of her headaches and focal seizures, and the objective medical evidence, particularly Dr. Jing's treatment notes, which indicated that Plaintiff's symptoms were not as frequent or severe as she claimed. (Docket No. 8-2 at ECF p. 21). The ALJ's discussion of the evidence throughout her decision contains sufficient detail to provide meaningful review of her conclusion that Plaintiff had moderate, but not marked, physical limitations. *See Rice v. Barnhart*, 384 F.3d 363, at 370 n. 5 (7th Cir. 2004); *Curvin*, 778 F.3d at 650-51 ("We do not discount [an ALJ's discussion] simply because it appears elsewhere in the decision"). With respect to 11.05B, Plaintiff has not identified objective evidence in the record that the ALJ did not consider that met or medically equaled the Listing. In sum, the ALJ did not err in making her Step 3 determination.

### 3. Residual Functional Capacity

Tracie E.'s second assignment of error is really a series of arguments that result in her conclusion that the ALJ's Residual Functional Capacity was not supported by substantial evidence. She first argues that the ALJ used her activities of daily living ("ADLs") to determine that she had a residual functional capacity to work a full-time job. She then argues that the ALJ cherry picked the evidence that supports her decision while ignoring contrary evidence, which would support a conclusion of disability.

Turning to the first argument, Plaintiff is correct that ALJs should not equate daily activities with full time work. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). However, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [her] impairments was credible or exaggerated." *Id.*; *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). That the ALJ weaves her analysis of the reliability of the claimant's statements into her assessment of residual functional capacity, as the ALJ did here, is insignificant since the regulations anticipate overlap. *See* 20 C.F.R. § 404.1529(a), (c)(4); SSR 96–7p, 1996 WL 374186, at *3. Thus, there is a critical difference between an ALJ improperly saying, "The claimant can perform this range of activities; therefore she can work," *see Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); and an ALJ reasonably saying, "The claimant can perform this range of activities, therefore she can do more than she claims, and is not credible." *Alvarado*, 836 F.3d at 750; *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013).

Here, the ALJ did the latter. She explicitly acknowledged that she did not consider Plaintiff's daily activities "to be conclusive evidence the [Plaintiff] can sustain the demands of full-time work activity[,]" but concluded that her activities, viewed in conjunction with the

objective evidence, indicated that she could do more than she claimed. (Docket No. 8-2 at ECF p. 18). For example, the ALJ noted that Plaintiff testified at the administrative hearing that headaches confined her to bed five days a week, with continued blurred vision and seizures. (*Id.* at ECF p. 18, citing Docket No. 8-2 at ECF p. 54). The ALJ pointed out this conflicted the medical evidence suggesting that headaches were occurring once or twice a month. (*Id.*). The ALJ questioned Plaintiff on this contrast and she stated that the headaches were occurring daily, yet were not enough to cause her to report a moderate to severe headache to her doctor. The ALJ also found this testimony inconsistent with other evidence that Plaintiff liked being outside and went for walks regularly, or cared for her four grandchildren on a regular basis (even for short periods of time alleged), performed some light household chores and was able to shop independently. (Docket No. 8-2 at ECF pp. 18, 21–22). The ALJ correctly observed that Plaintiff's sister's statement that she drove short distances was inconsistent with Plaintiff's testimony that she had not driven since her cubital tunnel surgery in March 2016. (*Id.* at ECF p. 18). The ALJ similarly concluded that Plaintiff's ability to manage her finances, remember her multiple medications, attend church services, and, again, care for her grandchildren indicated that her ability to concentrate and attend to tasks was not as limited as she claimed. (Docket No. 8-2 at ECF pp. 18–19).

It was the ALJ's responsibility to decide the facts and resolve discrepancies in the record. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The ALJ's resolution has adequate support in the medical evidence, the state agency physician's opinions, and Plaintiff's hearing testimony. The ALJ did not have to override this evidence with Plaintiff's inconsistent statements at the hearing. Thus, I do not see the ALJ's statements as misrepresenting Plaintiff's daily-living activities.

Tracie E's second argument is that the ALJ "cherry-picked" the medical evidence. An ALJ may not ignore a claimant's subjective complaints simply because they are not supported by medical evidence, but "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (clashes between objective evidence and self-reports properly detract from a claimant's credibility and may be probative of exaggeration). As the Seventh Circuit has explained, "It would be a mistake to say 'there is no objective medical confirmation of the claimant's pain; therefore, the claimant is not in pain.' But it would be entirely sensible to say 'there is no objective medical confirmation, and this reduces my estimate of the probability that the claim is true.'" *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010). That is what the ALJ did in this case: she noted stark differences between Plaintiff's testimony about the impact of her impairments, and what she told her doctors.

The ALJ noted that Plaintiff's hearing testimony that she experienced daily headaches that confined her to bed several days a week was inconsistent with medical evidence suggesting that the headaches were occurring once or twice in a six-month period. (Docket No. 8-2 at ECF p. 18 *comparing* Docket No. 8-2 at ECF p. 54 *with* Docket No. 8-9 at ECF p. 97, Docket No. 8-10 at ECF pp. 44, 64–65). The ALJ correctly observed that in 2018, the only time Plaintiff reported daily headaches occurred when she had stopped taking her prescribed medications. (Docket No. 8-2 at ECF p. 22, citing Docket No. 8-2 at ECF p. 54, Docket No. 8-10 at ECF p. 85). The ALJ did not find helpful Plaintiff's testimony that she really had experienced daily moderate to severe headaches all along, but it was not enough to report to Dr. Jing, even though headaches and focal seizures were the primary reason Plaintiff saw Dr. Jing every few months. (Docket No. 8-2 at ECF p. 18, citing Docket No. 8-2 at ECF pp. 72–73). The ALJ also observed

20

the fact that Plaintiff affirmatively denied having headaches the last time she saw Dr. Regnier.

(Docket No. 8-2 at ECF p. 22 citing Docket No. 8-10 at ECF p. 44). The ALJ similarly noted that

the medical evidence suggested that Plaintiff's focal seizures were not as frequent as she claimed.

(Docket No. 8-2 at ECF p. 18, citing Docket No. 8-2 at ECF pp. 69–72). The ALJ observed that

even though Plaintiff claimed she was having one or two focal seizures each month, she

acknowledged having no seizures between June and October of 2018. (*Id.*)

While Plaintiff complains that the ALJ placed undue emphasis on Dr. Jing's treatment

notes indicating that she retained normal strength, muscle tone, and gait, the ALJ reasonably

recognized that those reports undercut Plaintiff's allegations that she had problems walking, with

balance, and coordination. (Docket No. 8-2 at ECF pp. 20–21, 23). The ALJ also noted that the

medical evidence contradicted Plaintiff's claim that she still had problems with numbness and

tingling in her hands. (Docket No. 8-2 at ECF pp. 18–19, citing Docket No. 8-6 at ECF p. 150).

The ALJ appropriately used the medical evidence in finding that it undermined the reliability of

Plaintiff's subjective complaints. *See Jones*, 623 F.3d at 1161.

Finally, Plaintiff argues "[i]t is difficult to understand why the ALJ did not take into

consideration or address any of the subjective testimony of . . . her employer at that time who

was her sister, Kim Stevens." (Docket No. 37 at ECF p. 10). But, the ALJ dedicated substantial

discussion to Ms. Stevens testimony and third party function report recognizing that she testified

"the claimant had difficulty concentrating, staying on task, and with comprehension," but also

noting that Ms. Steven's testimony was "inconsistent with the medical evidence documenting

issues with the medical evidence that does not support the opined level of severity or frequency

of seizures or vision issues as noted above." (Docket No. 8-2 at ECF p. 23). Thus, the ALJ

assigned Ms. Steven's similar weight as the claimant's allegations. Again, it is not this court's job

to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869.

Essentially Plaintiff asks this court to reweigh the evidence differently than the ALJ did. Of course, this extends beyond this court's standard on review. Plaintiff suggests that the mere fact that she applied for disability is evidence that she is unable to work full time, and "submit[s] that [she] is telling the truth about her conditions." (Docket No. 21 at ECF pp. 22, 24). But a claimant "must do more than point to a different conclusion that the ALJ should have reached" to demonstrate that the ALJ was patently wrong. *Jones*, 623 F.3d at 1162.

The ALJ complied with SSA's regulatory requirements by giving specific reasons for finding that Plaintiff's account of her limitations was unreliable, and providing an evidentiary basis for her findings. *See Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). I find remand is not warranted on Plaintiff's second assignment of error.

## V.  CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court **AFFIRM** the ALJ's opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 12th day of February, 2021.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.